**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| VERONICA DEGELMAN and ANA PAULA BARRESE, | |
| Plaintiffs, | Civil Action No.: 16-286 (JLL) (SCM) |
| v. | **OPINION** |
| LINCOLN NATIONAL LIFE INSURANCE COMPANY, ADRIANA ANDRADE, and GARY BEANE, | |
| Defendants. | |

**LINARES**, District Judge.

This matter concerns the payment of life insurance benefits and comes before the Court by way of a motion to dismiss: Defendants Lincoln National Life Insurance Company ("Lincoln"), Adriana Andrade ("Andrade") and Gary Beane ("Beane") (collectively "Defendants") move to dismiss the complaint filed by Plaintiffs Veronica Degelman ("Degelman") and Ana Paula Barrese ("Barrese") (collectively "Plaintiffs"). (ECF No. 7.) The Court has considered the parties' submissions and heard oral argument on June 8, 2016. For the reasons set forth below, the Court grants in part and denies in part the motion to dismiss. Degelman's claims shall proceed against Lincoln and Beane (but not against Andrade), and Barrese's claims shall be dismissed without prejudice.

## FACTUAL BACKGROUND[1]

On or about July 23, 2007, Lincoln issued policy number T201611441 (the "Policy") of life insurance on the life of Edivaldo Coutinho ("Coutinho"), with a benefit amount of $500,000. (Compl. ¶ 1.) Degelman was named as the primary beneficiary under the Policy, and at the time, was married to Coutinho and known as Veronica Coutinho. (*Id.* ¶¶ 2, 3.)

With respect to Designation and Change of Beneficiary, the Policy states as follows:

> Designation of Beneficiary
> The Beneficiary named in the application for this Policy will receive the Proceeds when the Insured dies unless the Beneficiary designation has been changed by the Owner.
>
> Change of Beneficiary
> The owner may change any Beneficiary designation while the Insured is alive unless otherwise provided in the previous designation. A change of Beneficiary designation will revoke any previous designation.
>
> A change of designation may be made by filing a written request with the Home Office. The request must be in a form acceptable to the Company. The Company may require this Policy for endorsement of a change of Beneficiary designation.

(*See* ECF No. 7-2, Rauls Decl., Ex. B (the Policy) at 3.)

In or about the early part of 2008, Coutinho and Degelman sent a fax to Defendant Andrade, requesting that the contingent beneficiary under the Policy be changed from Degelman's minor children[2] to Barrese, and that Degelman remain as primary beneficiary. (*Id.* ¶ 5.) Andrade sent a blank change of beneficiary form to Coutinho, asking him to sign and return it. (*Id.* ¶ 6.) Andrade

---

[1] This background is derived from Plaintiff's Complaint, and other documents that are integral to and/or explicitly relied upon in the Complaint, which the Court must accept as true at this stage of the proceedings. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758 (3d Cir. 2009).
[2] The original contingent beneficiaries were Edivaldo Coutinho (son of Degelman and Coutinho), and Ana Licia Santan (daughter of Degelman). (*Compl.* ¶ 4.) Both were minors at the time. (*Id.*)

2

stated that she would fill in the change of beneficiary form in accordance with Coutinho's instructions. (*Id.*) Coutinho signed the form and returned it as instructed, and assumed that the change of beneficiary went into effect as requested. (*Id.* ¶¶ 7, 8.) Andrade allegedly failed to execute the change of beneficiary request. (*Id.* ¶ 19.)

Degelman and Coutinho divorced on August 24, 2009. (*Id.* ¶ 9.) Since their divorce, Degelman paid all of the Policy premiums pursuant to a verbal agreement with Coutinho. (*Id.* ¶ 10.)

At various times since 2011, Degelman spoke to and communicated in writing with Defendant Beane, who was the Lincoln agent servicing the Policy. (*Id.* ¶ 11.) Degelman advised Beane that she and Coutinho had divorced, that her last name was no longer Coutinho, that she had remarried and her last name was now Degelman, and asked Beane if she should change her name as the beneficiary under the Policy. (*Id.* ¶ 12.) Beane advised Degelman that it would not be necessary to change her name as the beneficiary under the Policy, and he failed to advise Degelman of New Jersey law to the contrary. (*Id.* ¶¶ 13, 14.)

On or about July 24, 2015, Coutinho died while residing in Brazil. (*Id.* ¶ 15.) Degelman, believing herself to be the primary beneficiary, filed a claim to receive the benefits of the Policy. (*Id.* ¶ 16.) Lincoln denied the claim on grounds that Degelman was no longer a beneficiary as a result of the divorce, in accordance with New Jersey law, specifically N.J.S.A. 3B:3-14. (*Id.* ¶ 17.) Lincoln further advised that there were no contingent beneficiaries named under the Policy, and that the request made in 2008 had only removed the original contingent beneficiaries, but had not named Barrese as contingent beneficiary. (*Id.* ¶¶ 18, 19.)

This lawsuit followed. Count 1 of the Complaint alleges negligence against Andrade and Beane, for failure to properly execute the change of beneficiary request in 2008 and for failure to advise on the impact of the New Jersey law regarding divorce and beneficiary designation, respectively. (*See* ¶¶ 21-24.) In Counts 2 and 3, Plaintiffs seek reformation of the Policy to name Degelman as primary beneficiary and Barrese as contingent beneficiary under the Policy, respectively, such that they would be entitled to the $500,000 face value. (*Id.* at 6-7.)

## PROCEDURAL HISTORY

On December 7, 2015, Plaintiffs filed a three-count Complaint in the Superior Court of New Jersey, Law Division, Essex County. (ECF No. 1-1 ("Compl.").) Defendants removed the action to this Court on January 15, 2016. (ECF No. 1.) This Court has jurisdiction under 28 U.S.C. § 1332.

Defendants moved to dismiss on February 25, 2016. (*See* ECF No. 7-1 ("Mov. Br.").) Plaintiffs filed opposition on March 21, 2016. (ECF No. 9 ("Opp. Br.").) Defendants replied on March 28, 2016. (ECF No. 11 ("Reply Br.").) The Court heard oral argument on June 8, 2016. (*See* ECF No. 14.)

## LEGAL STANDARDS

Defendants seek to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction and/or failure to state a claim, under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively. There are differing standards of review under each. *See Cohen v. Kurtzman*, 45 F. Supp. 2d 423, 428 (D.N.J. 1999) (citing cases).

### A. Rule 12(b)(1) – Subject Matter Jurisdiction / Standing

Federal courts have limited jurisdiction and are permitted to adjudicate "cases" and "controversies" only as permitted under Article III of the Constitution. *See* U.S. Const. art. III, § 2; *see also Phila. Fed'n of Teachers v. Ridge*, 150 F.3d 319, 322-23 (3d Cir. 1998). "That case-or controversy requirement is satisfied only where a plaintiff has standing." *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273 (2008). "Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed." *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006) (citing *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003)); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) ("If a dispute is not a proper case or controversy, the courts have no business deciding it . . . .").

"Standing implicates both constitutional requirements and prudential concerns." *Common Cause v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009) (citing *Kowalski v. Tesmer*, 543 U.S. 125, 128 (2004)). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004) (quotations, citations omitted). The "irreducible constitutional minimum" of standing consists of three elements: the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)).

Additionally, "[i]n contrast to constitutional standing, prudential standing 'embodies judicially self-imposed limits on the exercise of federal jurisdiction.'" *Common Cause*, 558 F.3d at 258 (quoting *Elk Grove Unified Sch. Dist.*, 542 U.S. at 11 (quotation omitted)). And "[a]lthough the Supreme Court has 'not exhaustively defined the prudential dimensions of the standing doctrine, [the Court has] explained that prudential standing encompasses the general prohibition on a litigant's raising another person's legal rights . . . .'" *Id.* (quoting *Elk Grove Unified Sch. Dist.*, 542 U.S. at 12.)

"A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *In re Schering-Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) (quoting *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007)); *Kurtzman*, 45 F. Supp. 2d at 428 (noting that a motion to dismiss under Rule 12(b)(1) "attacks . . . the right of a plaintiff to be heard in Federal court"). When ruling on such a motion, a distinction must be made between a facial and factual attack. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). If the Rule 12(b)(1) motion is a facial attack, "the court looks only at the allegations in the pleadings and does so in the light most favorable to the plaintiff." *U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007) (citing *Mortensen* 549 F.2d at 891). On the other hand, when the Rule 12(b)(1) motion is a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen* 549 F.2d at 891.

Here, Defendants' motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is a factual attack because it challenges the "actual facts" that support jurisdiction, and

not merely how those facts were pled. *Pa. Shipbuilding Co.*, 473 F.3d at 514. Accordingly, the Court may "review evidence outside the pleadings" in determining whether subject matter jurisdiction exists. *Id.* (citation omitted).

### B. Rule 12(b)(6) – Failure to State a Claim

To withstand a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

To determine the sufficiency of a complaint under *Twombly* and *Iqbal* in the Third Circuit, the court must take three steps: first, the court must take note of the elements a plaintiff must plead to state a claim; second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (citations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

The Court's role is not to determine whether the non-moving party "will ultimately prevail" but whether that party is "entitled to offer evidence to support the claims." *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 302 (3d Cir. 2011). The Court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## ANALYSIS

As noted, Lincoln denied Degelman's claim for the Policy proceeds on grounds that Degelman was no longer primary beneficiary as a result of the divorce, pursuant to N.J.S.A. 3B:3-14. (Compl. ¶¶ 15-17.) Lincoln further advised that Barrese was not a contingent beneficiary, because the request made in 2008 had only removed the original contingent beneficiaries, but had not named Barrese as contingent beneficiary. (*Id.* ¶¶ 18, 19.)

The complaint alleges three counts against Defendants. Count 1 of the Complaint alleges negligence against Andrade and Beane—Andrade for failing to properly execute the request to name Barrese as contingent beneficiary in 2008, and Beane for failing to advise on the impact of the New Jersey law regarding divorce and beneficiary designation. (*See* Compl. ¶¶ 21-24.) In Counts 2 and 3, Degelman and Barrese, respectively, seek reformation of the Policy so that they may collect the proceeds. (*See* Compl. at 5-6.)

In this section, the Court discusses Degelman and Barrese's claims separately, and concludes that Degelman's claims shall proceed, while Barrese's claims must be dismissed without prejudice for failure to state a claim.

### A. Degelman Has Sufficiently Demonstrated Standing and a Plausible Entitlement to Relief With Respect to Her Claims of Reformation, and Negligence as to Beane.

Defendants first argue that Degelman does not have standing as primary beneficiary under the Policy because of Coutinho and Degelman's divorce in 2009 and application of N.J.S.A. 3B:3-14. (*See* Mov. Br. at 8-11.) Indeed, Lincoln conceded on the record that the crux of this case is the application of N.J.S.A. 3B:3-14. (*See* Tr.) That statute states in relevant part:

> 3B:3-14. Revocation of probate and non-probate transfers by divorce or annulment; revival by remarriage to former spouse
> a. Except as provided by the express terms of a governing instrument, a court order, *or a contract* relating to the division of the marital estate made between the divorced individuals before or after the marriage, divorce or annulment, a divorce or annulment:
>    1) revokes any revocable:
>       a) dispositions or appointment of property made by a divorced individual to his former spouse in a governing instrument[3] and any disposition or appointment created by law or in a governing instrument to a relative of the divorced individual's former spouse[.]

N.J.S.A. 3B:3-14 (emphasis added).

Regardless of whether N.J.S.A. 3B:3-14 applies or not, the Court finds that Degelman has adequately alleged standing, and plausibly stated a claim upon which relief can be granted, sufficient to survive the instant motion to dismiss. As explained below, if N.J.S.A. 3B:3-14 does not apply, Degelman has stated a claim for reformation; if it does apply, Degelman has stated a claim for negligence against Beane.

1. <u>Reformation</u>

Lincoln denied Degelman's claim for the Policy proceeds on grounds that she had been revoked as primary beneficiary upon divorce from Coutinho, in accordance with N.J.S.A. 3B:3-

---

[3] Life insurance policies are included within the definition of "governing instrument." *See* N.J.S.A. 3B:1-1.

14. (*See* Compl. ¶ 17.) In Count 2, Degelman "demands judgment reforming the [Policy] to provide that . . . Degelman is the proper primary beneficiary and requiring Lincoln to pay $500,000.00 benefit to . . . Degelman along with interest, attorney fees and costs of suit." (Compl. at 5.) Because the complaint can be construed to find that Degelman was never revoked as primary beneficiary, Degelman has sufficiently stated a claim for reformation.

Here, in pertinent part, Degelman alleges that "[s]ince their divorce, Degelman has paid all of the premiums under Coutinho's life insurance policy pursuant to a verbal agreement with Coutinho." (Compl. ¶ 10.) Construing the complaint in a light most favorable to Degelman, the Court finds that she has sufficiently alleged the existence of a contract within the meaning of N.J.S.A. 3B:3-14. Stated differently, the complaint sufficiently alleges that Degelman was not revoked as beneficiary upon divorce pursuant to N.J.S.A. 3B:3-14 because Degelman and Coutinho entered into an agreement whereby Degelman would remain as primary beneficiary in exchange for her payment of the policy premiums.

There is nothing to suggest that the alleged oral contract between Degelman and Coutinho is insufficient as a matter of law to trigger the exception to N.J.S.A. 3B:3-14. First, the limited case law interpreting N.J.S.A. 3B:3-14 does not provide guidance on whether a "contract" need be in writing for purposes of the N.J.S.A. 3B:3-14 exception,[4] nor could the Court could locate any

---

[4] The cases relied on by Defendants are distinguishable. For example, in *Fox v. Lincoln Financial Group*, the Appellate Division held that "mere verbal expression of an intent to change a beneficiary designation is ineffective" where a policy states that changes must be in writing. 439 N.J. Super. 380, 390 (App. Div. 2015) (citing *DeCeglia v. Estate of Colletti*, 265 N.J. Super 128, 136 (App. Div. 1993)). Here, however, the complaint can be construed as suggesting, for purposes of a reformation cause of action, that Degelman was never revoked in the first place, thus obviating the need for her to re-establish herself as primary beneficiary. Additionally, *Dean v. New England Mut. Life Ins. Co.*, No. 14-2211, 2015 WL 404743 (D.N.J. Jan. 29, 2015) is distinguishable because in *Dean* the Judgment of Divorce made clear that the divorced spouse had been "supplanted" as beneficiary by the children. *Id.* at *5. Finally, the Court notes that in *Hadfield v. Prudential Ins. Co.*, 408 N.J. Super. 48, 50 (App. Div. 2009), the issue of whether N.J.S.A. 3B:3-14 applied was addressed at the motion for summary judgment stage, where there was relevant evidence in the record.

relevant legislative history on the scope of "contract" within N.J.S.A. 3B:3-14. However, it is clear that under New Jersey law, contracts need not be in writing to be valid. *See Wanaque Borough Sewerage Auth. v. Twp. of W. Milford*, 144 N.J. 564, 574 (1996) ("Contracts are traditionally classified as express, implied-in-fact or implied-in-law. The contract is express if the agreement is manifested by written or spoken words, and implied-in-fact if the agreement is manifested by other conduct.") (quoting Robert A. Long, Note, *A Theory of Hypothetical Contract*, 94 YALE L.J. 415, 415 n.3 (1984)). Second, even though Degelman and Coutinho entered in to a written Judgment of Divorce, it is premature to determine whether it was meant to be the exclusive document pertaining to the division of the marital estate. Again, the case law and legislative history do not provide guidance on this point. Thus, the Court concludes that when construing the complaint in a light most favorable to Plaintiffs, Degelman has sufficiently demonstrated standing as the primary beneficiary under the Policy to assert a claim of reformation.

"Reformation corrects the written policy to accurately state the policy terms upon which the parties agreed." *Pierides v. GEICO Ins. Co.*, No. A-2783-08T1, 2010 WL 1526377, at *4 (N.J. Super. Ct. App. Div. Apr. 19, 2010). Generally, the equitable remedy of reformation is available "only where there is mutual mistake or where a mistake on the part of one party is accompanied by fraud or other unconscionable conduct of the other party." *Heake v. At. Cas. Ins. Co.*, 15 N.J. 475, 481 (1954); *see also Phillips v. Metlife Auto & Home/Metro. Grp. Prop. and Cas. Ins. Co.*, 378 N.J. Super. 101, 104, 874 A.2d 617 (App. Div. 2005). "Reformation will not be granted based upon a mistake resulting from 'the complaining party's own negligence.'" *Pierides v. GEICO Ins. Co.*, No. A-2783-08T1, 2010 WL 1526377, at *4 (N.J. Super. Ct. App. Div. Apr. 19, 2010) (quoting *Millhurst Milling & Drying Co. v. Auto. Ins. Co.*, 31 N.J. Super. 424, 434 (App. Div.

1954)). "For a court to grant reformation, there must be clear and convincing proof that the contract as reformed is what the contracting parties understood and meant it to be." *Id.* "The party seeking reformation, usually the insured, has the burden to prove the actual agreement." *Id.*

Here, when construing the complaint in a light most favorable to Degelman, the Court agrees that she has sufficiently stated a plausible reformation claim. In short, if Degelman is able to convince the finder-of-fact that she and Coutinho entered in a "contract" whereby she would remain as primary beneficiary under the Policy in exchange for continued payment of the Policy premiums, then she can plausibly demonstrate that Lincoln erred in denying her the Policy proceeds on grounds that she had been revoked as primary beneficiary under N.J.S.A. 3B:3-14. In other words, under this theory, because Degelman was never revoked under N.J.S.A. 3B:3-14, Lincoln would reform the contract to name her as primary beneficiary and pay the proceeds to her.[5] Given the factual nature of such a claim, the Court finds that Degelman has sufficiently pleaded this claim to survive the motion to dismiss. To be clear, the Court has no opinion on whether Degelman will ultimately prevail on this claim, but simply finds that the complaint sufficiently shows a plausible claim to reformation such that Plaintiff is "entitled to offer evidence to support the claims." *United States ex rel. Wilkins*, 659 F.3d at 302.

2. Negligence

In contrast, if Degelman is unable to convince the finder-of-fact that she and Coutinho entered into a "contract" for purposes of N.J.S.A. 3B:3-14, she alternatively has a potential

---

[5] The Court acknowledges that Degelman's reformation claim speaks in terms of negligence: "But for the negligence of Lincoln's agents, defendants Andrade and Beane, the policy would have been amended to make clear that the beneficiary should have been Veronica Degelman, whether or not she was divorced from Coutinho." (*Id.*, Count 2 ¶ 4.) However, given the related allegation concerning the verbal agreement between Degelman and Coutinho, the Court construes the reformation claim as speaking to the negligence of Defendants in determining that N.J.S.B.A. 3B:3-14 had revoked Degelman as primary beneficiary.

negligence claim against Beane for failing to advise her of the statute. Under this alternate reading of the complaint, Degelman was revoked as primary beneficiary upon divorce, and Beane breached his duty by allegedly advising Degelman that it would not be necessary to change her name as the beneficiary, in spite of the divorce and the operation of N.J.S.A. 3B:3-14.

First, even if Degelman was revoked under N.J.S.A. 3B:3-14, the Court finds that she has sufficiently alleged third-party standing to assert a negligence claim against Beane. "It is well settled in New Jersey that contract interpretation must be based on the intent of the parties." *M.G.M. Constr. Corp. v. N.J. Educ. Facilities Auth.*, 220 N.J. Super. 483, 487 (Law Div. 1987). As the New Jersey Supreme Court has explained,

> The determining factor as to the rights of a third party beneficiary is the intention of the parties who actually made the contract. They are the persons who agree upon the promises, the covenants, the guarantees; they are the persons who create the rights and obligations which flow from the contract. . . . Thus, the real test is whether the contracting parties intended that a third party should receive a benefit which might be enforced in the courts; and the fact that such a benefit exists, or that the third party is named, is merely evidence of this intention.

*Broadway Maint. Corp. v. Rutgers, State Univ.*, 90 N.J. 253, 259 (1982) (quoting *Brooklawn v. Brooklawn Hous. Corp.*, 124 N.J.L. 73, 76-77 (E. & A.1940)). "The contractual intent to recognize a right to performance in the third person is the key. If that intent does not exist, then the third person is only an incidental beneficiary, having no contractual standing." *Id.* (citing *Standard Gas Power Corp. v. New England Cas. Co.*, 90 N.J.L. 570, 573-74 (E. & A. 1917)). This "judicial task is simply interpretative" and the court "should examine the contractual terms to ascertain the parties' intent and in doing so accord contractual terms 'their plain and ordinary meaning.'" *Seven Caesars, Inc. v. Dooley House*, No. A-4747-12T2, 2014 WL 4450441, at *10 (N.J. Super. Ct. App.

Div. Sept. 11, 2014) (quoting *M.J. Paquet v. N.J. Dep't of Transp.*, 171 N.J. 378, 396 (2002)). "A third party beneficiary analysis is necessarily fact sensitive." *Id.* at *11.

The gravamen of the complaint is that Degelman and Coutinho agreed that Degelman would remain as the primary beneficiary under the Policy, despite the divorce. (*See* Compl. ¶ 17.) Construing the complaint in a light most favorable to Plaintiff, this is sufficient to establish third-party standing for a negligence claim against Beane at this early stage. As noted in connection with Degelman's reformation cause of action, discovery is needed to flesh out the contours of the alleged contract between Degelman and Coutinho, and thus it is premature decide whether or not the parties actually intended for Degelman to receive the Policy proceeds despite the divorce. Second, Degelman has alleged the elements of a negligence claim against Beane. Under New Jersey law, "a negligence cause of action requires the establishment of four elements: (1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages." *Jersey Cent. Power & Light Co. v. Melcar Util. Co.*, 212 N.J. 576, 594 (2013). "The first element, duty, is a question of law to be decided by the trial judge." *Ilg v. Meade*, No. A-1345-14T3, 2016 WL 3022533, at *3 (N.J. Super. Ct. App. Div. May 27, 2016) (citing *Carvalho v. Toll Bros. & Developers*, 143 N.J. 565, 572 (1996)). "[N]o bright line rule . . . determines when one owes a legal duty to prevent a risk of harm to another." *Wlasiuk v. McElwee*, 334 N.J. Super. 661, 666 (App. Div. 2000). "The imposition of a duty depends on the interplay of many factors, including: (1) the relationship of the parties; (2) the nature of the attendant risk; (3) the ability and opportunity to exercise care; and (4) the public interest in the proposed solution." *Ilg*, 2016 WL 3022533, at *3 (citing *Hopkins v. Fox & Lazo Realtors*, 132 N.J. 426, 439 (1993)). "Ultimately, [New Jersey] Supreme Court cases repeatedly emphasize that the question of whether a duty exists is one of

14

'fairness' and 'public policy.'" *Wlasiuk*, 334 N.J. Super. at 666-67 (quoting *Hopkins*, 132 N.J. at 439). With respect to the duty owed by an insurance agent, *Carter Lincoln-Mercury, Inc., Leasing Div. v. EMAR Grp., Inc.* is instructive:

> Courts addressing the existence and scope of the duty owed by one acting on behalf of an insured or prospective insured have determined that that duty encompasses claims alleging that the agent or broker failed: to obtain coverage after the client's policy had been canceled and that the agent failed to inform the client that coverage could not be obtained; failed to advise a client of insurance options; obtained insurance that failed to meet the insured's needs; failed to place the requested insurance; misrepresented to the insurance company information supplied by the insured; failed to take action after discovering during an inspection that the insured's sprinkler system was inoperative; failed to inform the insured that she was without insurance; and failed to inform the insured of the availability of immediate insurance coverage through a temporary binder.

135 N.J. 182, 189-90 (1994) (internal citations omitted).

Defendants argue that Beane had no duty to advise Degelman on the legal effects of N.J.S.A. 3B:3-14 since it is allegedly the matrimonial attorney's duty to resolve life insurance issues in divorce, and that it could be considered unauthorized practice of law for Beane to advise a client on the law. (*See* Reply Br. at 9.) Furthermore, the negligence theory presumes that Degelman was in fact revoked as primary beneficiary, and so it is unclear whether Beane still owed a duty to Degelman during the relevant time period. However, Degelman's attorney represented that he will present expert evidence to establish that Beane in fact had a duty to advise Degelman of the effects of N.J.S.A. 3B:3-14. (*See* Opp. Br. at 11; Tr.) Although the Court recognizes that the existence of duty is a matter of law to be decided by the Court, when construing the complaint in a light most favorable to Plaintiff, the Court finds that Degelman has sufficiently pleaded a negligence claim against Beane sufficient to allow such expert evidence to be presented. Again,

15

to be clear, the Court has no opinion on whether Degelman will ultimately prevail on this claim, but simply finds that the complaint sufficiently shows a plausible negligence claim as to Beane such that Degelman is "entitled to offer evidence to support the claims." *United States ex rel. Wilkins*, 659 F.3d at 302.

With respect to Andrade, under this reading of the complaint, Degelman would not have a negligence claim against Andrade. First, all of the allegations pertaining to Andrade precede the 2009 divorce. Yet the 2009 divorce and the subsequent triggering of N.J.S.A. 3B:3-14 would necessarily render moot any alleged act of negligence committed by Andrade preceding the divorce. Furthermore, it is not clear whether Degelman has standing to assert claims against Andrade as they pertain to the naming of a contingent beneficiary under Coutinho's Policy. Accordingly, the Court shall dismiss Degelman's negligence claim as it pertains to Andrade.

### B. Barrese's Claims Shall Be Dismissed Without Prejudice For Failure to State a Claim at This Time.

It is axiomatic that the contingent beneficiary's rights are subordinate to the rights of the primary beneficiary. As explained above, the gravamen of this lawsuit is the alleged agreement between Degelman and Coutinho and the operation of N.J.S.A. 3B:3-14. As the purported primary beneficiary under the Policy, Degelman has a potential claim against Lincoln for reformation if she can establish that N.J.S.A. 3B:3-14 does not apply, and, alternatively, she has a potential claim against Beane for negligence if N.J.S.A. 3B:3-14 does in fact apply. Under either scenario, Barrese only has a claim if Degelman has a claim; and if Degelman has a claim, Barrese's claims would be moot since she would not be entitled to any proceeds under the Policy. Accordingly, the Court concludes that any potential claim of Barrese's is too speculative at this point, and so dismissal of Barrese's claims is without prejudice.

1. Reformation

In Count 3, Barrese asserts that, "[b]ut for the negligence of Lincoln's agents, Andrade and Beane, Barrese would be the contingent beneficiary" under the Policy. (*Id.*, Count 3 ¶ 2.) Barrese demands reformation "to provide that she is the contingent beneficiary under [the Policy] and, if the relief sought in counts one and two are denied, then awarding the policy benefit of $500,000.00 to her along with interest, attorney fees and costs of suit." (*Id.* at Count 3.)

Barrese has not demonstrated a plausible entitlement to relief at this time. On the one hand, if the facts prove that N.J.S.A. 3B:3-14 does not apply, Degelman would likely be entitled to reformation, and she would be entitled to 100% of the Policy proceeds as the non-revoked primary beneficiary. Barrese, as an alleged contingent beneficiary, would not be entitled to any Policy proceeds under such a scenario based on the facts as they exist now. In other words, Barrese's reformation claim would be moot if Degelman succeeds on her reformation claim. On the other hand, if Degelman is unsuccessful in her reformation claim, it would necessarily be in part because Degelman was revoked as primary beneficiary under N.J.S.A. 3B:3-14. If Degelman was revoked under N.J.S.A. 3B:3-14, then so was Barrese, as the statute explicitly revokes "any revocable disposition . . . to a relative of the divorced individual's former spouse." *See* N.J.S.A. 3B:3-14a(1)(a). Taken together, even if Barrese could prove that it was Coutinho's intent to name her as contingent beneficiary, she cannot state a claim for reformation because she was either revoked by operation of law, or because Degelman would take the Policy proceeds instead.

2. Negligence

With respect to the negligence claim, Barrese likewise cannot state a claim upon which relief can be granted, against either Andrade or Beane.

For example, even assuming that Andrade was negligent in failing to name Barrese as contingent beneficiary, this claim is moot for lack of damages. Again, if Degelman establishes a "contract" between her and Coutinho sufficient to demonstrate that she was never revoked as primary beneficiary under N.J.S.A. 3B:3-14, then Degelman would have a valid claim for reformation and she would be entitled to 100% of the Policy proceeds. Under this scenario, Barrese would be unable to establish damages flowing from Andrade's negligent act, since the Policy would be properly payable to Degelman instead. On the other hand, as explained in the preceding section, if Degelman was revoked under N.J.S.A. 3B:3-14, then Barrese was as well, likewise mooting any negligence by Andrade for lack of damages.

Similarly, Barrese cannot state a claim against Beane. Barrese acknowledges that she was not listed as a contingent beneficiary on the Policy due to Andrade's negligence, prior to the divorce. Barrese cannot establish that Beane owed her a duty, since there are no allegations that Beane was ever aware of Barrese's alleged contingent beneficiary status. Indeed, the allegations against Beane pertain only to interactions with Degelman. Thus, as a non-beneficiary who was revoked prior to Beane's involvement, Barrese is unable to establish that Beane owed her a duty as a matter of law.

### 3. Dismissal Without Prejudice

The Court acknowledges that Barrese theoretically has an interest in the Policy proceeds as a contingent beneficiary, but such a claim is too speculative at this point in time. Accordingly, dismissal is without prejudice to permit Plaintiffs to reassert Barrese's claims if the facts of this case change in a manner whereby it can be shown that Barrese is entitled to the proceeds instead of Degelman.

## **CONCLUSION**

For the reasons above, the Court grants in part and denies in part the motion to dismiss.

An appropriate Order accompanies this Opinion.

DATED: June 21, 2016

                                          JOSE L. LINARES
                                          UNITED STATES DISTRICT JUDGE